UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| Barbara Fagan-Zelazny, | Plaintiff, | Case No. 6:24-cv-6409 |
|---|---|---|
| v | | |
| Young Women's College Prep, | Defendant. | **COMPLAINT** <br><br> Jury Trial Demanded |

### Introduction

Plaintiff, Ms. Barbara Fagan-Zelazny, through her attorneys, the J. Morgan Levy Firm, PLLC, brings this action against defendant, Young Women's College Prep ("YWCP"), in connection with YWCP's unlawful termination of Ms. Fagan-Zelazny's employment.

1. Ms. Fagan-Zelazny brings this claim against her former employer, YWCP, because it engaged in disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended at 42 USC § 12101, et seq. ("ADA") and its implementing regulations at 28 CFR § 35, et. seq. ("ADA Regulations") and the New York State Human Rights Law at NY Exec. Law § 290, et seq. ("NYSHRL").

2. Ms. Fagan-Zelazny also brings a claim against YWCP for retaliating against her for exercising rights afforded to her pursuant to the Family Medical Leave Act at 29 USC § 2601 et seq. ("FMLA") and its implementing regulations at 29 CFR § 825.

### Parties and Related Individuals

3. Ms. Fagan-Zelazny is an individual living in Monroe County, State of New York.

4. YWCP is a K-12 charter school located at 33 Hoover Drive, in the city of Rochester, county of Monroe, State of New York.

5. Ms. Fagan-Zelazny was hired by YWCP with a start date of January 2, 2018, and held the position of Principal/Head of School until her termination on June 13, 2022.

6. As Principal/Head of School, Ms. Fagan-Zelazny reported to the YWCP Board of Trustees ("the Board").

7. YWCP is an "employer" as defined by the ADA.

8. YWCP is an "employer" as defined by the NYSHRL.

9. YWCP is an "employer" as defined by the FMLA.

10. Ms. Fagan-Zelazny was an "employee" of YWCP as defined by the ADA.

11. Ms. Fagan-Zelazny was an "employee" of YWCP as defined by the NYSHRL.

12. Ms. Fagan-Zelazny was an "employee" of YWCP as defined by the FMLA.

## Jurisdiction and Venue

13. This Court has jurisdiction over defendant YWCP pursuant to 28 USC § 1391 in that YWCP's principal place of business is in Monroe County, State of New York.

14. This court has subject matter jurisdiction pursuant to 28 USC § 1331 because this civil action arises under the ADA and FMLA, both federal laws.

15. We request that this Court exercise supplemental subject matter jurisdiction over plaintiff's New York State Law claims pursuant to 28 USC § 1367 because these claims are part of the same claim or controversy as plaintiff's federal claims.

16. Venue is proper in the Western District of New York pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## Facts Common to All Causes of Action

17. At all times relevant, Ms. Fagan-Zelazny was qualified for the job she held at YWCP and was able to perform the essential functions of the position with or without reasonable accommodation.

18. Not only did Ms. Fagan-Zelazny consistently receive positive performance reviews from YWCP, but she significantly improved YWCP's position in the community.

19. Some of her accomplishments for YWCP include:

    a. Leading the school to an impressive 95% four-year graduation rate for 4 years
    b. Securing a 3-year charter for the school, followed by an unprecedented 5-year renewal charter
    c. Receiving the "Ann Tisch Inspire Leadership Award" from the Young Women's Leadership Network ("YWLN") in recognition of her vision, passion, intelligence, innovations and perseverance
    d. Receiving recognition at the state level for the COVID-19 hybrid learning model and the Diversity Equity and Inclusion ("DEI") work she accomplished for the school

20. Two years into Ms. Fagan-Zelazny's tenure, Ms. Jennifer Allen became Chair of the Board of Trustees for YWCP, in or around July 2020.
21. The 2021-2022 school year was challenging for YWCP under the leadership of Board Chair Allen, due to residual COVID-19 impacts, including teacher and bus shortages, and heightened student needs.

22. During this period, Ms. Fagan-Zelazny repeatedly attempted to strategize ways to remedy these challenges, including discussing these issues with the Board.

23. Ms. Fagan-Zelazny had brought transportation issues to the Board in prior years and had included a plan to purchase a fifteen-passenger van as a remedy in her "Years 4 and 5 Long-Term Vision".

24. Unfortunately, Board Chair Allen was uninterested in discussing these realities, and instead seemed determined on undermining Ms. Fagan-Zelazny's leadership.

25. Another challenge during this time was the conduct of three principals who reported to Ms. Fagan-Zelazny.

26. Immediately upon notice of these behaviors, Ms. Fagan-Zelazny informed the Board the egregious allegations required outside counsel to investigate, and the Board agreed.

27. In January 2022, after experiencing prolonged difficulties in working with Board Chair Allen, Ms. Fagan-Zelazny requested a meeting with the YWCP Board of Trustees' Education Committee, to discuss how to move forward.

28. A meeting between Ms. Fagan-Zelazny and the Education Committee occurred on January 26, 2022.

29. During this meeting, Ms. Fagan-Zelazny shared a detailed letter expressing a crisis of confidence in her ability to lead under Board Chair Allen.

30. The Education Committee recommended Ms. Fagan-Zelazny not send that letter she drafted to Board Chair Allen.

31. Instead, the Education Committee recommended Ms. Fagan-Zelazny participate in a restorative circle with Board Chair Allen to discuss their challenges.

32. While the Education Committee promised to arrange the restorative circle, it never did, despite Ms. Fagan-Zelazny's request for an update on the progress of arranging the circle on February 8, 2022.

33. On March 1, 2022, Ms. Fagan-Zelazny was invited to an unexpected Zoom meeting. When she arrived in the meeting several Board members were present, as well as Ms. Erin Callahan, YWCP's attorney.

34. During this March 1, 2022 meeting, Ms. Fagan-Zelazny was confronted with out-of-context claims apparently arising from the investigations of staff misconduct she herself had initiated months earlier.

35. It quickly became clear the purpose of this meeting was to accuse Ms. Fagan-Zelazny of engaging in misconduct, and as she had no warning about the content of this meeting, Ms. Fagan-Zelazny was not prepared to respond to the allegations, learning about them for the very first time.

36. This meeting was both confusing and humiliating, exacerbating Ms. Fagan-Zelazny's stress and causing her to cry.

37. To compose herself, Ms. Fagan-Zelazny turned off her Zoom camera.

38. Ms. Callahan immediately demanded that Ms. Fagan-Zelazny turn her camera back on for the conversation and Ms. Fagan-Zelazny did so.

39. After this meeting, the Board sent Ms. Fagan-Zelazny a letter grossly and obviously misstating facts related to these investigations and Ms. Fagan-Zelazny's role in them. *See* Affidavit of Ms. Fagan-Zelazny, Exhibit A.

40. While the letter outlined supposed deficiencies in Ms. Fagan-Zelazny's performance, the Board offered a list of expectations for her continued employment. *See* Fagan-Zelazny Aff., Exhibit A.

41. Unfortunately, after this meeting Ms. Fagan-Zelazny experienced severe depression and anxiety with significant feelings of irritability, worry, distrust, anger, despair and episodes of panic. Ms. Fagan-Zelazny also experienced frequent crying spells and difficulty sleeping.

42. While she was able to show up and perform at work for the rest of the week following this meeting, Ms. Fagan-Zelazny was grateful she had a planned vacation scheduled the following week.

43. Ms. Fagan-Zelazny's vacation did not feel like a vacation.

44. On March 11, 2022, Ms. Fagan-Zelazny visited her primary care physician and was diagnosed with anxiety, depression, and panic disorder.

45. Anxiety, depression, and panic disorder are physical or mental impairments that substantially limit one or more major life activities.

46. That same day, Ms. Fagan-Zelazny's physician wrote her a sick leave note saying she would be out "March 14, 2021 [sic] through March 28, 2022" which was communicated to YWCP. *See* Fagan-Zelazny Aff., Exhibit B.

47. Ms. Fagan-Zelazny emailed this note to Board Chair Allen.

48. On March 16, 2022, YWCP sent Ms. Fagan-Zelazny FMLA leave paperwork.

49. On March 23, 2022, her physician wrote her out of work from March 28, 2022 to April 28, 2022.

50. Ms. Fagan-Zelazny was approved for leave pursuant to FMLA on April 4, 2022.  *See* Fagan-Zelazny Aff., Exhibit C.

51. On April 27, 2022, her physician wrote her out of work April 27, 2022, through May 28, 2022.

52. On May 24, 2022, her physician extended her leave through August 10, 2022.

53. Prior to and during the leave, Ms. Fagan-Zelazny communicated her intention to return to her duties at the conclusion of her leave period with the provision of reasonable accommodations as required by law.  *See* Exhibit D.

54. In example, on April 27, 2022, Ms. Fagan-Zelazny wrote to Dr. Idonia Owens, then-Interim Principal for YWCP, and Board Chair Allen seeking to begin arranging any accommodations she may need to perform her usual duties upon her return.

55. On May 5, 2022, Ms. Fagan-Zelazny wrote to Ms. Roberta McInnis, Director of Operations for YWCP, Dr. Owens, and Board Chair Allen noting she would like to ensure her request for accommodations could be settled before her return to work and requesting information on how to best ensure this happened.

56. On March 23, 2022, Ms. Fagan-Zelazny met with Ms. McInnis to discuss summer planning, charter renewal, and budget, and Ms. Fagan-Zelazny provided Ms. McInnis her physician's note.

57. On May 24, 2022, Ms. Fagan-Zelazny sent a completed "Accommodation Form" to YWCP detailing the accommodations her physician recommended be granted to Ms. Fagan-Zelazny given her disability.  *See* Exhibit E.

58. The YWCP, however, failed to engage in the interactive process legally required for determining and implementing such reasonable accommodations.

59. Instead, on June 10, 2022, Board Chair Allen requested a meeting with Ms. Fagan-Zelazny via text, without providing her the notice and other reasonable accommodations her medical provider clearly indicated Ms. Fagan-Zelazny needed, in an apparent attempt to notify her of her termination.

60. On June 13, 2022, the YWCP notified Ms. Fagan-Zelazny her position was terminated and presented a proposed severance agreement.  *See* Fagan-Zelazny Aff., Exhibit F.

61. The justification provided by defendant for her termination relied on Clause 4(c) of the employment agreement between Ms. Fagan-Zelazny and YWCP dated June 30, 2020. *See* Fagan-Zelazny Aff., Exhibit G.

62. Clause 4(c) states that if Ms. Fagan-Zelazny is unable to effectively perform her duties for more than ninety (90) days due to a physical, mental, or emotional illness, ailment, or accident, her employment may be terminated.

63. The YWCP erroneously marked March 11, 2022, as the commencement date of Ms. Fagan-Zelazny's disability-related leave.

64. This is factually incorrect as Ms. Fagan-Zelazny continued to perform her responsibilities for defendant until the approved start date of her disability-related leave on April 4, 2022.

65. In fact, Ms. Fagan-Zelazny was not even provided the paperwork to apply for FMLA leave until March 16, 2022.

66. Nothing in the communications Ms. Fagan-Zelazny received from YWCP indicated her medical leave began on March 11, 2022.

67. In fact, Ms. Fagan-Zelazny had taken pre-scheduled vacation time for the week ending on March 11, 2022.

68. Ms. Fagan-Zelazny's employment was terminated on June 13, 2022, which was before the end of her approved FMLA leave (and within the ninety-day period referenced in Clause 4(c) of her employment agreement).

69. The FMLA and YWCP's handbook provide up to 12 weeks of job protected leave. *See* Fagan-Zelazny Aff., Exhibit H.

70. The actions taken by the YWCP, including the failure to engage in the interactive process and the premature and wrongful termination of Ms. Fagan-Zelazny's employment, constitute a willful violation of her rights under the Americans with Disabilities Act.

71. In response to these actions, a charge was filed with the New York State Division of Human Rights (NYSDHR) and the Equal Employment Opportunity Commission (EEOC) under the charge number 525-2023-00452 on March 1, 2023.

72. A right to sue letter was issued by the EEOC on May 6, 2024. *See* Fagan-Zelazny Aff., Exhibit I.

73. Ms. Fagan-Zelazny has suffered significant monetary and non-monetary damages including loss of income, a loss of professional opportunities, medical and mental health costs, severe emotional distress, psychological injury, mental anguish, degradation, and embarrassment due to YWCP's discriminatory and retaliatory acts.

74. Ms. Fagan-Zelazny was also forced to abandon a portion of her research study due to her termination, which resulted in her needing to pay for an additional semester of graduate school.

## AS FOR A FIRST CAUSE
### Disability Discrimination and Failure to Accommodate in Violation of ADA & NYSHRL

75. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

76. YWCP is an employer as defined by the ADA and NYSHRL.

77. Ms. Fagan-Zelazny is an employee as defined by the ADA and NYSHRL.

78. Ms. Fagan-Zelazny has a physical or mental impairment that substantially limits one or more major life activities.

79. Ms. Fagan-Zelazny has a disability as defined by the ADA and NYSHRL.

80. Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 USC § 12112(a).

81. Like the ADA, under NYSHRL, it is unlawful to discriminate against individuals with a disability in the workplace.

82. YWCP knew Ms. Fagan-Zelazny was a person with a disability because Ms. Fagan Zelazny and her physician notified YWCP of such when she submitted her FMLA paperwork on or about March 30, 2022.

83. Ms. Fagan-Zelazny was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation.

84. Ms. Fagan-Zelazny requested a reasonable accommodation for her disability through a letter from her physician on or about May 25, 2022.

85. YWCP failed to engage in the interactive process and refused to make a reasonable accommodation for Ms. Fagan-Zelazny.

86. YWCP failed to articulate any reason for its refusal to engage in the interactive process.

87. Ms. Fagan-Zelazny suffered an adverse employment action because of her disability when she was terminated from her position on June 13, 2022.

88. Defendant's discriminatory actions toward Ms. Fagan-Zelazny, including its refusal to engage in the interactive process with Ms. Fagan-Zelazny and terminated her employment because she was disabled and needed accommodation, were committed with reckless indifference to her federally protected rights.

89. As a direct and proximate result of YWCP's discrimination and failure to provide Ms. Fagan-Zelazny with reasonable accommodations, she suffered economic and non-economic damages, including but not limited to, loss of income, a loss of professional opportunities, medical and mental health costs, severe emotional distress, psychological injury, mental anguish, degradation, and embarrassment.

90. Ms. Fagan-Zelazny is entitled to compensatory damages including, but not limited to, economic and non-economic damages, such as loss of income, a loss of professional opportunities, medical and mental health costs, severe emotional distress, psychological injury, mental anguish, degradation, and embarrassment, any wages, salary, employment benefits, or other compensation denied or lost due to the defendant's violation of the ADA and NYSHRL, plus prejudgment interest in an amount to be determined at trial, and attorneys' fees and costs.  Ms. Fagan-Zelazny also respectfully requests punitive damages be assessed against defendant due to its reckless indifference to her rights pursuant to the ADA and NYSHRL.

**AS FOR A SECOND CAUSE**
**FMLA Retaliation**

91. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92. YWCP is an employer with 50 or more employees in 20 or more workweeks in 2023 or 2022.

93. YWCP promises its employees it will provide FMLA leave to those employees meeting its eligibility requirements in its Handbook.

94. At the time Ms. Fagan-Zelazny's sought FMLA leave, she had worked for YWCP for at least 12 months, for at least 1,250 hours during the 12 months prior to the start of leave, and at a location where at least 50 employees are employed by YWCP.

95. Ms. Fagan-Zelazny was an employee of YWCP and was entitled to leave under the FMLA.

96. In March 2022, Ms. Fagan-Zelazny developed a serious health condition that made her temporarily unable to perform the essential functions of her position.

97. Ms. Fagan-Zelazny properly notified YWCP of her need for FMLA leave and provided the required medical certification.

98. Ms. Fagan-Zelazny's notifying YWCP of the need for leave and her taking such leave were protected activities under the FMLA.

99. YWCP approved Ms. Fagan-Zelazny's FMLA leave request from April 4, 2022 to May 23, 2022.

100. After this initial approval, Ms. Fagan-Zelazny reported the need to take additional FMLA leave through May 28, 2022.

101. During Ms. Fagan-Zelazny's FMLA leave, YWCP took adverse employment actions against her, terminating her employment.

102. YWCP's adverse actions were taken in retaliation for Ms. Fagan-Zelazny exercising her right to access job protected leave under the FMLA.

103. By retaliating against Ms. Fagan-Zelazny for taking protected FMLA leave, YWCP violated the anti-retaliation provisions of the FMLA.

104. As a direct result of YWCP's unlawful conduct, Ms. Fagan-Zelazny has suffered economic and non-economic damages, including lost wages and benefits, and emotional distress.

105. Ms. Fagan-Zelazny is entitled to compensatory damages equal to any wages, salary, employment benefits, or other compensation denied or lost due to the defendant's violation of the FMLA plus prejudgment interest and liquidated damages, and all other compensation permitted pursuant to the FMLA.

WHEREFORE, plaintiff prays for relief as follows:

 A. For compensatory damages equal to any wages, salary, employment benefits, or other compensation denied or lost due to the defendant's violation of the FMLA, plus prejudgment interest and liquidated damages in an amount to be determined at trial;

B. For compensatory damages including, but not limited to, economic and non-economic damages, such as loss of income, a loss of professional opportunities, medical and mental health costs, severe emotional distress, psychological injury, mental anguish, degradation, and embarrassment, any wages, salary, employment benefits, or other compensation denied or lost due to the defendant's violation of the ADA and NYSHRL, plus prejudgment interest in an amount to be determined at trial, and attorneys' fees and costs.

C. Ms. Fagan-Zelazny also respectfully requests punitive damages be assessed against defendant due to its reckless indifference to her rights pursuant to the ADA and NYSHRL.

D. For such other and further relief as the Court deems just and proper.

Dated: Fairport, New York
June 26, 2024

J. Morgan Levy Firm, PLLC

By: _____
J. Morgan Levy, Esq.
Attorneys for Plaintiffs
24 N. Main St., Suite 2
Fairport, NY 14450
Tel. 585-678-1160
Email: morgan@jmorganlevyfirm.com
