EXHIBIT F



June 13, 2022

**VIA EMAIL**
Barbara F. Zelazny
426 Clover Hills Drive
Rochester, NY 14618

    *Re:*    *Separation Agreement*

Dear Barb:

    This letter will confirm that your employment with Young Women's College Prep Charter School of Rochester ("YWCP" or the "School") will end as of the close of business today, June 13, 2022, pursuant to Paragraph 4(c) of your July 1, 2020 Letter Agreement with the School (the "Letter Agreement").

    As you know, on March 11, 2022 you went out of work on a medical leave of absence. On May 24, 2022, you provided correspondence from your health care provider extending your leave of absence through August 10, 2022. Accordingly, as of today, you will have been unable to perform your YWCP duties for more than ninety (90) days and your employment shall terminate under the Letter Agreement.

    Although no severance is provided under the Letter Agreement, the Board of Trustees of YWCP (the "Board") proposes to provide you with a severance package pursuant to the enclosed separation agreement. The Board proposes this package in an effort for the parties to end their employment relationship amicably.

    As you know, when you met with the Executive Committee on March 1, 2022, the Board was significantly concerned regarding the state of the School and your ability to serve as Principal. The Board was deeply troubled by the need for three separate independent investigations into staff conduct between November 2021 and January 2022 and the findings thereof which, in part: (i) highlighted your failure to promptly take action to investigation reported concerns of inappropriate interactions between a staff member and student; (ii) confirmed you knowingly failed to enforce the School's policy regarding staff driving students in their personal vehicles; and (iii) revealed that staff were hesitant to go to you with concerns or issues because they find you to be unresponsive. The Board was further concerned by your refusal, during the March 1, 2022 meeting, to engage in a substantive conversation regarding the Board's concerns or the investigations. Notably, you continued to appear largely unfamiliar with the investigation reports despite the serious issues addressed therein, and the Board's prior questions to you regarding them. Over the past several months, the Board has further become aware of additional issues, such as routine evaluations not being performed.

Barbara F. Zelazny
*Re: Separation Agreement*
June 13, 2022
Page 2 of 2

    As stated, however, the Board wishes to amicably end its employment relationship with you. To do so, the proposed separation agreement provides you with a severance equal to two (2) months of your annual salary. Additionally, while your YWCP health insurance benefits shall terminate as of the close of business on June 30, 2022, your COBRA continuation costs would be covered through August 31, 2022 under the proposed agreement. The agreement also contains a release of claims, a confidentiality provision and a non-disparagement provision. As such, you are encouraged to seek the advice of counsel prior to executing it.

    If you wish to receive the benefits provided by the agreement, please return it to me, signed and dated, by *Tuesday, July 5, 2022.* If you have any questions about the proposed agreement or your separation from employment with YWCP, please do not hesitate to contact me. We wish you the best of luck in the future.

                        Sincerely,

                        Jennifer Allen
                        Chair, Board of Trustees

Encl.
cc: personnel file

# EMPLOYMENT SEPARATION AGREEMENT

THIS EMPLOYMENT SEPARATION AGREEMENT (this "*Agreement*") is entered into by and between **Young Women's College Prep Charter School of Rochester**, (the "*Employer*") and Barbara F. Zelazny (the "*Employee*"). Employer and Employee may be referred to herein individually as a "*Party*" and collectively as the "*Parties*."

WHEREAS, Employee is employed by Employer in the position of Principal of the Young Women's College Prep Charter School;

WHEREAS, on March 1, 2022, the Executive Committee of Employer's Board of Trustees (the "*Board*") met with Employee to discuss the Board's concerns regarding Employee's performance as summarized in a memorandum dated and provided to Employee on March 10, 2022;

WHEREAS, on March 11, 2022, Employee went on a medical leave of absence from work which, on May 24, 2022, was extended by Employee's health care provider through August 10, 2022; and

WHEREAS, as of June 13, 2022 Employee shall have been unable, as a result of a physical, mental or emotional illness or ailment or accident to effectively perform Employee's duties for more than ninety (90) days and her employment shall terminate pursuant to Paragraph 4(c) of the Letter Agreement between Employer and Employee, dated June 30, 2020 (the "*Letter Agreement*").

NOW THEREFORE, in order to set forth the terms and conditions of Employee's separation from employment with Employer, and ensure that there will be no disputes now or hereinafter with regard to the Letter Agreement, employment relationship or the termination thereof, Employee and Employer agree as follows:

1. **Statement of Benefits and Consideration:** In consideration of the mutual promises exchanged pursuant to this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree to the following:

    (a)  Separation Date: Employee's employment with Employer shall terminate as of the close of business on June 13, 2022 (the "*Separation Date*").

    (b)  Severance Payment: Conditioned upon Employee's compliance with the obligations under this Agreement, Employer shall pay Employee in the total amount of Twenty-Eight Thousand Six Hundred Forty-One and 83/100 Dollars ($28,641.83), representing two (2) months of Employee's annual salary (the "*Severance Payment*"). The Severance Payment shall be paid in bi-weekly payments through Employer's ordinary payroll process and shall be subject to withholdings. The Severance Payment shall begin to be paid to Employee on the first regular Employer pay day after the revocation period set forth in Paragraph 3(f) of this Agreement has expired without revocation.

(c) <u>Continuation of Health Insurance:</u> Employee's health insurance coverage shall terminate as of June 30, 2022. Employee will be given notice of Employee's rights to the continuation of insurance benefits under COBRA under separate notice. Conditioned upon Employee's compliance with the obligations under this Agreement, if Employee timely elects COBRA continuation benefits, Employer agrees to pay its employer-contribution towards Employee's COBRA continuation costs for two (2) months, representing July 2022 and August 2022. After August 31, 2022, Employee shall bear the full cost of any COBRA continuation premiums.

(d) <u>Employer's Property:</u> Employee represents and warrants that she has not damaged or destroyed any Employer property and that, as of the date Employee executes this Agreement, Employee has returned to Employer all Employer property, including but not limited to keys, key cards, ID cards, phones, laptops, desktops, iPads, peripherals, etc., access codes and passwords, and any and all Employer documentation including, without limitation, any documentation relating to Employer's operations, procedures, policies, employees and students.

(e) <u>Confidentiality of this Agreement:</u> Employee shall not disclose the terms of this Agreement, except that Employee may disclose the terms of this Agreement to Employee's accountant, tax/financial advisor, lawyer, and spouse and as may be required by law or lawful subpoena, or to enforce this Agreement. If Employee receives a request for disclosure of this Agreement which is mandated by law or lawful subpoena, Employee agrees to notify Employer of the request at least seventy-two (72) hours before responding to the request. *Employee agrees that Employee's obligation under this Paragraph 1(e) commenced as of the date Employee received this Agreement for review.*

(f) <u>No Admissions:</u> Nothing in this Agreement shall be construed as an admission of wrongdoing on the part of Employee or Employer and Employer expressly denies wrong doing of any kind.

(g) <u>Non-disparagement and Public Statements:</u> Employee agrees to refrain from, directly or indirectly, making any disparaging, defamatory or critical remarks about the Releasees, as defined in Paragraph 2(a), to any third parties either verbally or in writing. Employee further agree that Employee shall only state, directly or indirectly, in response to any inquiry by a third party or otherwise, that the Parties mutually decided to end their employment relationship and did so amicably. *Employee agrees that Employee's obligations under this Paragraph 1(g) commenced as of the date Employee received this Agreement for review.*

2. <u>General Release & Waiver:</u>

(a) Employee unconditionally releases and discharges Employer, its subsidiaries, affiliates, successors, assigns, and all of its former and current officers, trustees, directors, employees, and agents (in their individual and representative capacities) (collectively referred to as the "*Releasees*") from any and all causes of action, suits, damages, claims, proceedings, and demands that Employee has, or may have, against the Releasees, whether asserted or unasserted, whether known, unknown, unsuspected or unanticipated, concerning any matter occurring up to and including the date of the signing of this Agreement.

(b)     Employee acknowledges that Employee is waiving and releasing, to the full extent permitted by law, all claims against the Releasees, including (but not limited to) all claims arising out of, or related in any way to, Employee's employment with Employer, the Letter Agreement or Employee's separation from employment, including (but not limited to) any and all breaches of contract claims, tort claims, claims of wrongful discharge of any kind, including wrongful termination in violation of public policy, claims for intentional or negligent infliction of emotional distress or outrageous conduct, claims for breach of duty, misrepresentation, fraud, breach of the implied covenant of good faith and fair dealing, indemnification, claims for libel, slander and defamation, violation of privacy, claims under the Title VII of the Civil Rights Act of 1964 as amended, the Equal Pay Act, the Age Discrimination in Employment Act ("*ADEA*"), the Older Worker Benefit Protection Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, New York State Human Rights Law, New York State Labor Law, New York State Education Law, the Employees Retirement Income Security Act, the Fair Labor Standards Act, the Family Medical Leave Act, and all other applicable federal, state and local statutes and common law, including but not limited to those relating to wage and hour, employee benefits, and/or employee discrimination, harassment and retaliation, and any and all claims for attorneys' fees. This release excludes any claims that cannot be waived by law.

(c)     Nothing in this General Release and Waiver shall affect any rights expressly reserved by or granted to Employee in this Agreement or any rights Employee may have or become entitled to in the future to receive benefits under Employer's pension and welfare benefit plans at the times set forth in such plans for the payment of the same pursuant to each plan's document and the relevant elections under the plans which may have been made or may be made in the future by Employee or Employee's respective heirs, successors, beneficiaries, or assigns.

(d)     Employee agrees never to commence any lawsuit, proceeding, petition, charge or claim (civil, administrative, or criminal) either individually or as a member of a class against any of the Releasees based on any action that occurred prior to the date of this Agreement. Except as prohibited by law, if Employee breaks this promise and files such proceeding, lawsuit, charge, or claim, Employee agrees to refund to Employer all payments made pursuant to this Agreement and further agrees to pay all costs incurred by the Releasees in defense of such action, including their attorneys' fees. Employee remains free to participate in a proceeding before the U.S. Equal Employment Opportunity Commission or the New York State Division of Human Rights should Employee choose to do so, but Employee expressly agrees that this Agreement compensates Employee fully for any damages Employee has sustained in connection with Employee's employment with Employer and hereby waives any rights Employee may have to receive any additional consideration or compensation from Employer arising out of Employee's employment.

(e)     This General Waiver and Release provision (Paragraphs 2(a) through (e)) shall be construed to release all claims to the fullest extent allowed by law.

3.     **Knowing Release/Waiver:** This Agreement contains a knowing waiver of Employee's rights and claims under ADEA. Employee acknowledges that Employee's waiver is knowing and voluntary, which means, at a minimum, that Employee understands that:

(a)     The release and waiver is part of an agreement between Employee and

Employer and is written so that Employee understands it;

(b) Employee does not waive any rights or claims that may arise after Employee executes this Agreement;

(c) Employee's waiver is in exchange for consideration that is more valuable than that to which Employee is already entitled;

(d) Employer hereby advises Employee to consult with an attorney prior to executing this Agreement and Employee has done so or elected to not do so;

(e) Employee has at least twenty-one (21) days after receipt of this Agreement to decide whether to execute this Agreement (and that any changes to the Agreement from the time it was offered to the Employee, whether material or immaterial, do not restart, extend or affect in any manner the running of the twenty-one (21) day period);

(f) Employee may revoke this Agreement within seven (7) days after signing it, and this Agreement will not be effective or enforceable until this seven (7) day period has expired. Revocation must be made in writing to Employer stating, "I hereby revoke my acceptance of our Agreement" and be sent to Jennifer Allen, Chair of the Board at jnadineallen@gmail.com. For this revocation to be effective, written notice must be received by Ms. Allen no later than the close of business on the seventh (7th) day after Employee signs this Agreement, or if the seventh (7th) day falls on a Saturday or Sunday or holiday, on the next business day. Unless revoked, this Agreement shall be effective as of the date the Agreement is fully executed, provided, however Employee agrees and acknowledges that Employee's obligations under Paragraphs (1)(e) and (g) commenced and became effective as of the date Employee was provided with this Agreement for review; and

(g) Employee is eligible to receive the benefits provided herein as a result of (i) Employee's employment with Employer, (ii) the separation of Employee's employment with Employer, and (iii) Employee's execution of this Agreement.

4. **Miscellaneous Provisions:**

(a) Employee acknowledges that the restrictions imposed by this Agreement are necessary for the protection of the business, goodwill and other legitimate interests of Employer and are considered by Employee to be reasonable for such purposes. Employee agrees that any breach, or threatened breach, of this Agreement by Employee could cause irreparable damage to Employer, and that in the event of such breach, or threatened breach, Employer shall have, in addition to any and all remedies at law, the right to an injunction, specific performance, as well as all other equitable relief to prevent the violation of Employee's obligations hereunder without the necessity of any proof of actual damages or the posting of a bond or other security. Employee agrees to pay Employer's costs, including without limitation reasonable attorneys' fees, incurred in enforcing this Agreement.

(b) Employee represents that Employee has no claims or actions pending in Employee's name, or on behalf of any other person or entity, against Employer or any of the other

Releasees.

(c) Employee agrees to make herself available to Employer and to respond to requests by Employer for information concerning work performed by Employee while employed by Employer or with respect to any present or future legal action that involves Employer. Employee agrees that he shall not testify about Employer at the request of any party other than Employer, unless Employee receives a subpoena. In the event that Employee is subpoenaed in connection with any litigation or investigation involving Employer, Employee agrees to notify Employer immediately so as to permit Employer an opportunity to respond to such notice before Employee takes any action or make any decision in connection with such subpoena. Employer will reimburse Employee for reasonable out-of-pocket expenses incurred as a result of such cooperation (not including attorneys' fees). Nothing in this Agreement affects or limits Employee's right under applicable law to file with, or provide information to, any governmental or regulatory body.

(d) In the event a claim is brought against Employer for any conduct which Employee engaged in or any act Employee took while employed by Employer, and such conduct is proved before an administrative agency or court of competent jurisdiction, Employee agrees that Employee shall indemnify, defend and hold Employer harmless from any and all related losses, liabilities, claims, demands, causes of action, proceedings, administrative actions, judgments and/or costs or expenses, including but not limited to reasonable attorneys' fees.

(e) This Agreement represents the entire agreement between the Parties with respect to the matters contained herein. No modification, termination, or attempted waiver of any provisions of this Agreement shall be valid unless in writing signed by the Parties. Employee acknowledges and affirms that as of the date of this Agreement, Employee has been paid and/or has received all leave (paid and unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits to which Employee may be entitled and that no leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits are due to Employee, other than as expressly set forth in this Agreement.

(f) The headings of each paragraph of this Agreement are for convenience only, and do not constitute terms of the Agreement. The Parties agree that this Agreement shall be construed in accordance with the laws of the State of New York (without regard to choice of law or conflict of laws rules), except that there shall be no presumption against the draftsman in the interpretation of this Agreement by any court. The Parties irrevocably submit to the exclusive jurisdiction of the United States District Court, Western District of New York, or the appropriate state court in New York State, Monroe County, for the purpose of any suit, action, or other proceeding arising out of or in connection with this Agreement. Failure by either Party to exercise or to delay in exercising any right or power hereunder shall not operate as a waiver thereof. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, void or unenforceable, the illegality or unenforceability of such provision shall not impair the enforceability of any other provision of this Agreement, provided, however, that, upon any finding by a court of competent jurisdiction that the general release/waiver set forth in Paragraphs 2 and 3 of this Agreement is illegal, void, or unenforceable, Employee agrees either to return promptly to Employer the full amount of the consideration paid to Employee pursuant to Paragraphs 1(b) and (c) of this Agreement, or a lesser amount as determined by Employer in its sole discretion, or to

execute a release, waiver and/or covenant that is legal and enforceable, as determined by Employer in its sole discretion. This Agreement may be executed in several counterparts, each of which shall be an original against any Party who or which signed it.

*By execution of this Agreement, Employee acknowledges that: (a) Employee understands the terms of this Agreement, and therefore, Employee's release and waiver is knowing and voluntary; (b) if Employer pays any monies or provides any consideration under this Agreement and Employee later challenges the enforceability of this Agreement, Employee may be required by a court to repay Employer for all monies paid and consideration provided hereunder by Employer; and (c) Employer has advised Employee that Employee should consult with an attorney prior to execution of this Agreement and Employee has done so.*

## Signature Page – Employment Separation Agreement

EMPLOYEE:

_____  Date:_____
Barbara F. Zelazny

EMPLOYER:

_____  Date:_____
By: Jennifer Allen, Chair
      Board of Trustees