# Exhibit G

Young Women's College Prep Charter School of Rochester
Letter of Agreement

This Letter of Agreement ("Agreement") is made by and between Young Women's College Prep Charter School of Rochester ("YWCP"), a 501(c)(3), not-for-profit educational corporation organized under the laws of the State of New York, with a principal place of business located at 133 Hoover Drive, Rochester, NY 14615 and Barbara F. Zelazny ("Employee"), with an address of 426 Clover Hills Drive, Rochester, NY 14618. (YWCP and the Employee are individually referred to herein as "Party" and collectively as the "Parties.")

**WHEREAS**, the Employee is currently the principal of YWCP and YWCP desires to continue to employ the Employee in that position; and

**WHEREAS**, the Employee desires to continue to be employed as the principal of YWCP under the terms and conditions stated herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Employment At-Will.** The Employee's employment with YWCP shall, at all times, be at-will. The Employee's employment with YWCP under the terms of this Agreement shall begin on July 1, 2020 (the "Effective Date") and shall continue thereafter until such date when this Agreement, and the Employee's employment, is terminated pursuant to Section 4 below. Upon termination of this Agreement, and the Employee's employment, all of YWCP's obligations under this Agreement shall automatically and immediately cease and terminate, except as otherwise specifically provided in this Agreement.

2. **Position, Standards, and Duties.** The Employee shall have the position of Principal of YWCP and shall report to the Board of Trustees of YWCP (the "Board"). The Employee shall be subject to the charter, bylaws, rules and policies of YWCP, as may be amended from time to time, and shall have all such duties and responsibilities customary of the position of Principal/Head of the School, as well as such other duties and responsibilities that the Board may from time-to-time reasonably direct. The Employee's duties shall include, but shall not be limited to:

    a. *Training and Shadowing.* The Employee shall participate in appropriate and on-going professional development opportunities.

    b. *School Development.*

        i. The Employee shall continue to develop, among other things, the following for YWCP: a Common Core-aligned instructional framework that reflects the curriculum description as put forth in the YWCP approved charter application; best practices in each academic discipline and school culture; a staff orientation schedule; a student orientation schedule; and a summer bridge program and schedule.

    ii. The Employee shall continue to develop relationships with the Rochester community, specifically the community to be served by YWCP, including but not limited to youth development agencies, community boards, churches, elementary schools, area businesses, governmental entities, and other community organizations.

    iii. The Employee shall continue to actively recruit students at every grade level, where appropriate. The Employee's means of active recruitment shall include, but not be limited to, attending community meetings, advertising, conducting information sessions, and managing the YWCP admission lottery.

    iv. The Employee shall, in collaboration with other YWCP staff and to the extent necessary, members of the Board, recruit and interview staff. The Employee has the authority to hire, promote and/or terminate any of the staff of YWCP that report to her, either directly or indirectly, unless otherwise directed by the Board.

    v. The Employee shall serve as the ultimate supervisor for all YWCP staff and shall ensure that routine evaluations of YWCP staff be performed yearly. The Employee may designate an Assistant Principal, or other appropriate YWCP employee, to assist with the staff evaluation process, which shall consist of written evaluations and a review meeting.

    vi. The Employee shall develop and facilitate data-based, weekly professional development sessions for YWCP staff.

    vii. The Employee shall act as the instructional and building leader of YWCP and will perform all duties required to successfully lead YWCP's students and staff in accordance with the terms of the approved charter and pre-determined evaluation criteria.

c. ***Reporting.*** The Employee, in collaboration with the YWCP School Education Committee (the "Education Committee"), will develop matrices for weekly updates, bi-monthly Education Committee meetings, and monthly Board meetings. Indicators shall be related to school performance, including but not limited to instructional goals, and formative and summative outcomes; professional development; school culture and climate; attendance; retention and recruitment; and any outstanding personnel matters. The Employee shall forward these reports to the Education Committee chairperson as outlined above.

d. ***Evaluation.***

    i. By July 1st of each school year, the Employee shall provide to the Board a list of proposed goals for the upcoming school year. The Education Committee and the Employee shall discuss the proposed goals including how they will be measured, after which time the Board and the Employee shall agree upon finalized goals (the "Goals").

    ii. On or before April 30th of each calendar year, the Employee shall initiate the evaluation process for the period that began on July 1st of the previous calendar year by submitting to the Board a self-appraisal for the current school year, which shall address, in part, the Employee's performance related to the Goals.

    iii. The Board's Performance Review Committee shall review the Employee's self-appraisal and evaluate her performance based upon the Goals, and other such criteria as the Board deems appropriate.

The Employee agrees to furnish any such additional information as the Board may request. Once the evaluation process is completed, the Board shall provide the Employee with a written evaluation and meet with the Employee to discuss.

  e. *Other Duties.*

    i. The Employee shall perform all other duties as required or necessary to complete and perform the essential functions of her position, as well as other duties and responsibilities that may be assigned to her by the Board from time to time.

    ii. The Employee shall maintain all professional certification(s) as required by the Board.

    iii. The Employee shall devote all of the Employee's working time, attention and efforts to the affairs of YWCP and perform her duties and responsibilities faithfully and to the best of the Employee's ability.

    iv. The Employee shall work in collaboration with the SLN, which may include but not limited to any details provided for by any written agreement with SLN and/or as otherwise provided to the Employee.

    v. In collaboration with the Chairperson of the Board (the "Chairperson") and leadership from the Young Women's College Prep Foundation, The Employee will identify a schedule for regular meetings, process for sharing information, and priorities for collaboration in service of YWCP students.

3. **Compensation.**

  a. *Annual Salary.* The Employee shall be paid an annual salary of One Hundred Seventy-One Thousand Eight Hundred Fifty-One and 00/100 Dollars ($171,851.00), minus applicable deductions and withholdings (the "Annual Salary"), in accordance with YWCP's normal payroll process. The Annual Salary may be reviewed and adjusted annually as determined by the Board, in its sole and absolute discretion.

  b. *Bonus.* The Employee may be paid an annual bonus in an amount that the Board, in its sole and absolute discretion deems appropriate (the "Annual Bonus"). The amount of the Annual Bonus, if any, shall be determined by the Board and shall be based upon the Employee's achievement of performance benchmarks and overall performance.

c. *Fringe Benefits.*

   i. Benefit Plans and Programs. The Employee shall be eligible to participate in any and all equity, savings, pension plans and programs and all welfare plans, medical plans, dental plans and other similar benefits, nor or hereinafter available to other YWCP employees, subject only to the Employee meeting the qualification requirements for any such benefits; provided, however, that YWCP will contribute one hundred percent (100%) of the cost for the Employee to participate in a family coverage health and/or dental plan.

   ii. Tuition Reimbursement. YWCP will reimburse the Employee up to fifty percent (50%) of the tuition costs incurred by her for each course completed and necessary to earn an Education Doctorate in Executive Leadership at St. John Fisher College (each a "Tuition Payment"). The Tuition Payment shall be subject to: (A) Ms. Zelazny completing the required course with a final grade of B or higher; (B) providing the Chairperson of the Board and/or the Director of Operations with proof of the required course having been completed; (C) documentation establishing the itemization of the tuition charges, to the reasonable satisfaction of the Chairperson of the Board and/or the Director of Operations; and (D) any such other information and/or documentation reasonably requested by the Board and/or the Director of Operations.

   The Employee must reimburse YWCP in the full amount of the Tuition Payment(s) if her employment with YWCP ends "for cause" or due to voluntary resignation within two (2) fiscal years from her last received Tuition pursuant to Section 4(d) or (f) of this Agreement (the "Tuition Reimbursement"). The Tuition Reimbursement will be due, in full, as of the Employee's last day of employment with YWCP.

d. *Tools.* YWCP shall provide the Employee with a cell phone, an e-mail account, business cards, and a computer, all of which must be promptly returned to YWCP upon the end of the Employee's employment, for any reason.

e. *Expenses.* YWCP agrees to reimburse the Employee for reasonable expenses incurred in the performance of her duties and responsibilities; provided, however, that the Employee seek the Director of Operations' prior approval for any expense in excess of $200.00 and timely submit receipts demonstrating all expenditures for requested reimbursements.

f. *Time Off.* In addition to all time off required by law, the Employee shall be entitled to the following:

   i. Vacation Days. The Employee is entitled to twenty-one (21) days of paid vacation to taken in accordance with vacation time identified in the YWCP Academic Calendar (the "Vacation Days"). The Vacation Days shall accrue quarterly throughout the school year. The Parties agree that up to five (5) Vacation Days may be carried over from one fiscal year to the next fiscal year, upon written

      request to the Board prior to June 30th. Approval of carry over Vacation Days shall be subject to the consent and sole discretion of the Board.

  ii. <u>Holidays.</u> The Employee is entitled to the following paid holidays: New Year's Day, Martin Luther King, Jr. Day, President's Day, Memorial Day, July 4th, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, and the Friday after Thanksgiving Day, Christmas Eve, Christmas Day and New Year's Eve.

  iii. <u>Sick Days.</u> The Employee is entitled to five (5) paid sick days. Additional days may be granted at the discretion of the Board. The Parties agree that up to five (5) sick days may be carried over from one fiscal year to the next fiscal year, upon written request to the Board prior to June 30th. Approval of any carry over sick days shall be subject to the consent and sole discretion of the Board.

  iv. <u>Personal Days.</u> The Employee is entitled to five (5) paid personal days. Additional days may be granted upon written request to the Board of Trustees. Approval of any additional personal days shall be subject to the consent and sole discretion of the Board of Trustees. Personal days may not be carried over from one fiscal year to the next fiscal year.

4. **Termination.** The Employee's employment with YWCP at all times shall be "at-will" and terminable at any time. Without impacting the Employee's "at-will" status, this Agreement shall terminate, and the Employee shall cease to be an employee of YWCP, upon occurrence of any of the following events:

   a. Mutual agreement by the Employee and YWCP;

   b. Death of the Employee;

   c. The disability of the Employee. For the purposes of this Agreement, the Employee shall be considered disabled, if (A) YWCP and the Employee agree that the Employee is disabled or (B) the Employee is unable, as a result of physical, mental or emotional illness or ailment or accident to effectively perform the Employee's duties for more than ninety (90) days during any twelve (12) month period;

   d. The Employee's employment being terminated for "cause" as defined herein;

   e. The Employee's employment being terminated by YWCP other than for "cause";

   f. Voluntary resignation by the Employee; or

   g. The cessation of YWCP.

   Upon termination of this Agreement, all of YWCP's obligations to the Employee shall cease except as otherwise set forth in this Agreement and the Employee agrees to immediately return to YWCP all YWCP property.

5. **Payments Upon Termination.**

a. Without in any manner limiting the ability of either Party to terminate this Agreement at any time, and for any reason, if this Agreement is terminated by YWCP pursuant to Section 4(e), then subject to the Employee executing a separation agreement which includes a general release of claims and a continued cooperation provision in a form and manner satisfactory to YWCP, the Employee shall be entitled to receive as a severance payment of three (3) months at the Employee's Annual Salary and three (3) months' continuation of the benefits set forth in Section 3c(i), above, minus applicable deductions and withholdings (the "Severance"). The Severance shall be paid in equal installments, a single lump sum or a combination thereof, at YWCP's sole discretion.

b. For purposes of this Agreement, the term "cause" shall mean any one of the following acts:

   i. The Employee's fraud, dishonesty or gross misfeasance, as determined by the Board, in good faith;

   ii. The Employee's conviction by a court of competent jurisdiction of, or a plea to, a crime involving moral turpitude or dishonesty; or

   iii. The Employee's (A) unreasonable refusal to perform the material duties of the Employee's position, as determined by the Board, in good faith, or (B) substantial and material breach of, or default under, this Agreement. In the case of any of the conditions set forth in this Section 5(b)(iii), the Employee shall be given written notice of the intent of the Board to terminate the Employee's employment under this Section 5(b)(iii), and shall be permitted thirty (30) calendar days from receipt of such written notice to promptly cure any such refusal to perform, breach or default to the reasonable satisfaction of the Board, in good faith.

6. **Confidentiality.**

   a. The Employee acknowledges that in her position with YWCP she will receive and otherwise become aware of proprietary and confidential information related to YWCP, SLN, or any SLN affiliate or networks schools (the "YWCP Group"). The Employee covenants and agrees that the Employee will not, at any time during her employment with YWCP, or thereafter, directly or indirectly, use for the Employee's own account or disclose to any other person, Confidential Information, as hereinafter defined except insofar as such disclosure is (i) reasonable required in the course of the Employee's employment duties hereinunder; or (ii) otherwise required by law.

   b. As used herein, "Confidential Information" means non-public and proprietary information about the YWCP Group of any kind, nature or description, including but not limited to any proprietary information, trade secrets, data, formulae, financial information, budget projections, cost analyses, proposals, business operations, employee information, personnel files, payroll data, terms and details of any contracts to which the YWCP Group has been a party, intellectual property, software, know-how, methods, techniques, formulae, data and processes, whether or not protectable

      under patent, trademark or copyright law and whether or not in final or draft version, all related communications among and between YWCP Group employees, student information and data, vendor information and marketing information.

   **c.** This Agreement applies to all Confidential Information that is, or ever been possessed by the Employee. The Employee's non-disclosure and confidentiality obligations shall continue in perpetuity unless otherwise agreed upon by the Parties in writing.

   **d.** If the Employee receives a request from a court of competent jurisdiction, a governmental body or any other third party to disclose all or part of the Confidential Information, the Employee agrees, to the extent lawful, to (i) immediately, within 24 hours of receipt notify the Board of the request and the circumstances surrounding the request; (ii) give YWCP at least five (5) business days from the date the Employee gives YWCP notice to take defensive legal action prior to the Employee's disclosure of the Confidential Information; and (iii) if disclosure is required, furnish only that portion of the Confidential Information which is required to be disclosed.

**7. Work Made for Hire.** The Employee hereby agrees that all work in connection with the performance of her duties as Principal, including all developments, designs, inventions, software, improvements, trade secrets, trademarks, patentable or copyrightable subject matter or proprietary information that the Employee makes or conceives in connection with the performance of her duties under this Agreement, either solely by the Employee or jointly with others and either on or off YWCP's premises, relating to any actual or planned product, service or activity of YWCP, or suggested by, or resulting from, any work performed or provided by the Employee for YWCP (a "<u>Development</u>") shall be considered to be "work made for hire" under the U.S. Copyright Act, 17 U.S.C. §§ 101 et seq. and shall be owned exclusively by YWCP. If any such Development, in whole or in part, is not construed to be a work made for hire, the Employee hereby assigns to YWCP, and will in the future upon YWCP's request confirm such assignment to YWCP, all right, title and interest in such Development or part of such Development. The Employee has no proprietary interest in any Developments, including any patent, copyright, trademark and trade secret rights. The Employee shall provide necessary assistance to protect, enforce or perfect YWCP's rights and interests in such trade secrets, patents, copyrights and trademarks and shall not register, file or obtain any patent, copyright or trademark relating to any of the Developments in its own name. To the extent that the Employee has any moral rights or similar rights in the Developments under the law of any jurisdiction, the Employee expressly waives those rights. The Employee waives any rights to ownership of the Developments or to prevent YWCP from making modifications to the Developments as YWCP deems necessary. Nothing in this Section 7 shall: (1) give YWCP any ownership rights or interest in any intellectual property created by the Employee prior to January 1, 2018, including the Employee's work relating to a Restorative "Way of Thinking" Theory into Practice; or (2) prevent the Employee from discussing, using or otherwise enjoying the right to use the Developments to prepare an educational dissertation required by a recognized college or university that is part of the required curriculum of such college or university for the Employee to achieve a doctoral degree; or (3) create any claim of ownership for intellectual property generated by Employee not in connection with the performance of her duties hereunder and otherwise unrelated to

her employment by YWCP. The Employee shall seek prior written approval from the Board, which shall not be unreasonably withheld, for all other uses of the Developments.

8. **Miscellaneous.**

   a. The Employee warrants that she: (i) has no current, past or pending criminal charge or a criminal conviction in any jurisdiction; and (ii) she has accurately and truthfully represented her academic and professional credentials, and certificates to the Board.

   b. The article and section headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

   c. This Agreement shall be construed and enforced exclusively in accordance with the laws of the State of New York without reference to any conflict of law or choice of law principles that would defeat the application of New York law.

   d. If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

   e. This Agreement (including any recitals set forth herein and any exhibits or schedules attached hereto, all of which are expressly incorporated herein and deemed a material part hereof) contains the entire agreement between the Parties relating to the subject matter hereof. All prior negotiations between the Parties are merged into this Agreement, and there are no independent promises, agreements, conditions, undertakings, warranties or representations, oral or written, express or implied, by or between the Parties. No change or modification of this Agreement shall be valid unless the same is in writing and signed by the Parties. No waiver by any party of any term or condition of this Agreement shall be binding unless the same shall be set forth in a writing signed by the Parties expressly referencing this section. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver, nor shall a waiver in any instance constitute a waiver in any subsequent instance, except as the same shall be set forth in a writing signed by the Parties.

   f. Any notice to be given under this Agreement shall be sufficient if it is in writing and sent by certified or registered mail and addressed to:

   > YWCP
   > Chairperson, Board of Trustees
   > c/o Director of Operations
   > 133 Hoover Drive
   > Rochester, NY 14615
   >
   > Barbara F. Zelazny

    426 Clover Hills Drive
    Rochester, New York 14618
    bzelazny@youngwomenscollegeprep.org

  Notices to the Employee may also be sent by the Board to the Employee's email address.

g. This Agreement may be executed in counterparts and by each party hereto on a separate counterpart, all of which when so executed shall be deemed to be an original, and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart of this Agreement. In the case of any such electronic delivery by a Party, such Party shall thereafter deliver an originally executed signature page to the other party, but the failure of any such delivery of an original shall not in any way affect the validity or binding effect of this Agreement, the Parties hereto waiving any such objection or defense.

h. Any and all rights and remedies herein provided shall be cumulative, and not exclusive of any other rights or remedies provided or available under applicable law.

i. The Parties have mutually participated in the negotiation and drafting of this Agreement either with the advice of independent legal counsel or with the opportunity to retain the same. As such, this Agreement shall not be more strictly construed against either Party.

j. Any provision hereof that requires or contemplates action or enforcement subsequent to termination hereof shall survive termination of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the dates set forth below.

| | |
|---|---|
| **Young Women's College Prep Charter School of Rochester** | **Barbara F. Zelazny** |
| By: *[signature]* | By: *[signature]* |
| Laura E. O. Norris<br>Chairperson of the Board of YWCP | Barbara F. Zelazny |
| Date: June 30, 2020 | Date: June 30, 2020 |